No. 16-4356

In the

United States Court of Appeals

For the

Eighth Circuit

---

Paul Hill,

Plaintiff-Appellant,

vs.

Accounts Receivable Services, LLC,

Defendant-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA,
NO. 16-CV-219-DWF-BRT

---

**REPLY BRIEF OF APPELLANT**

Darren Brayer Schwiebert
DBS LAW, LLC
301 Fourth Avenue South, Suite 280N
Minneapolis, MN 55415
(612) 501-6008

March 8, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. 3

ARGUMENT ....................................................................................................... 5

I.   THE DISTRICT COURT ERRED BY DISMISSING HILL'S
     CLAIM THAT ARS DID NOT HAVE STANDING TO SUE. ......... 6

II.  THE DISTRICT COURT ERRED IN REQUIRING HILL TO
     PLEAD *SUBJECTIVE* CONFUSION. ...................................... 11

III. THE DISTRICT COURT RULING PROHIBITS CONSUMERS
     WHO PREVAIL IN STATE COLLECTION CASES FROM
     BRINGING FDCPA CLAIMS. ................................................... 14

     A.   *The FDCPA Does Not Contain A Materiality
          Requirement.* ................................................................ 15
          1. *Hahn v. Triumph P'ships LLC, 557 F.3d 755 (7th Cir. 2009).* ............ 15

          2. *Miller v. Javitch, Block & Rathbone, 561 F.3d 588 (6th Cir. 2009)* ................ 17

          3. *Donohue v. Quick Collect, Inc., 592 F.3d 1027 (9th Cir. 2009)* ............ 18

          4. *Gabriele v. Am. Home Mortg. Servicing, 503 Fed. Appx. 89 (2d Cir. 2012)* .. 19

          5. *Elyazidi v. SunTrust Bank, 780 F.3d 227 (4th Cir. 2015)* ................ 20

          6. *Jensen v. Pressler & Pressler, 791 F.3d 413 (3rd Cir. 2015)* ................ 21

     B.   *The FDCPA Violations Were Material.* ...................... 25

IV.  THE DISTRICT COURT ERRED IN DISMISSING
     PLAINTIFF'S CLAIM BASED ON AN ATTEMPT TO COLLECT
     UNAUTHORIZED INTEREST. ................................................. 28

V.   THE DISTRICT COURT ERRED IN HOLDING THAT
     CONDUCT VIOLATING 15 U.S.C. § 1692E CANNOT VIOLATE
     15 U.S.C. § 1692F. .................................................................. 32

CONCLUSION .................................................................................. 34

Appellate Case: 16-4356     Page: 2     Date Filed: 03/08/2017 Entry ID: 4510143

# TABLE OF AUTHORITIES

## Cases

*Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp.2d 945 (D. Minn. 2008) ... 40

*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.,*
715 F. Supp 2d 871 (D. Minn. 2010) ........................................................ 39

*Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238 (11th Cir. 2012) ................ 30, 31

*Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162
(9th Cir. 2006) ......................................................................................... 41

*Currier v. First Resolution Inv. Corp.*, 762 F.3d 529 (6th Cir. 2014) .......... 41

*Donohue v. Quick Collect, Inc.,* 592 F.3d 1027 (9th Cir. 2009) .................. 23

*Duffy v. Landberg*, 215 F.3d 871 (8th Cir. 2000) ........................................ 16

*Edwards v. McCormick*, 126 F. Supp.2d 795 (S.D. Ohio 2001) ................. 40

*Egge v. Healthspan Servs. Co.*, 2002 U.S. Dist. LEXIX 23985
(D. Minn. 2002) ...................................................................................... 37

*Elyazidi v. SunTrust Bank*, 780 F.3d 227 (4th Cir. 2015) ........................... 26

*Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507 (9th Cir. 1994) ........... 41, 42

*Gabriele v. Am. Home Mortg. Servicing,*
503 Fed. Appx. 89 (2d Cir. 2012) ......................................................... 24

*Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) ......... 13, 14

*General Underwriters v. Kline*, 233 Minn. 345
46 N.W.2d 794 (1951) ........................................................................ 11, 12

*Greene v. Dayton*, 806 F.3d 1146 (8th Cir. 2015) ...................................... 37

*Hahn v. Triumph P'ships LLC*, 557 F.3d 755 (7th Cir. 2009). ................... 19

*Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) ............................................. 34

*Hogenson v. Hogenson*, 852 N.W.2d 266 (Minn. Ct. App. 2014) ............. 38

*Holt v. LVNV Funding, LLC*, 147 F. Supp.3d. 756 (S. D. Ind. 2015) ........... 41

*Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85 (2d Cir. 2008) .......... 22, 30

*Jensen v. Pressler & Pressler*, 791 F.3d 413 (3d Cir. 2015) ................... 15, 27

*Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) ..................... 29

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002) .................................... 38

*L.P. Medical Specialists, Ltd. v. St. Louis County*, 379 N.W.2d 104
(Minn. Ct. App. 1985). ............................................................................ 37

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873
(8th Cir. 2000) ........................................................................................ 38

*Miljkovich v. Shafritz & Duncan, P.A.*, 791 F.3d 1291(11th Cir. 2015) ........ 34

*Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009) ............. 21

*Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129 (D. Minn. 2005) ........ 13

*Neder v. United States*, 527 U.S. 1 (1999) ............................. 18, 21, 23, 24, 26

3

*Sheriff v. Gillie*, 136 S. Ct. 1594 (2016). ...................................................19, 32

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................................34

*Suesz v. Med-1 Solutions*, LLC, 757 F. 3d 636 (7th Cir. 2014) ................10, 11

*TEM Capital, LLC v. Leonard*, 2013 Minn. App. Unpub. LEXIS 1049
    (Minn. Ct. App. 2013) ........................................................................12

*Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643
    (7th Cir. 2009) ........................................................................20, 30

*Warren v. Sessoms & Rogers*, P.A., 676 F.3d 365 (4th Cir. 2012) .............. 25

*Woerthwein v. Midland Credit Mgmt.*, 2016 U.S. Dist. LEXIS 146624
    (N.D. Ill. 2016) ........................................................................16

## Statutes

15 U.S.C. § 1692e ........................................................................ 26

15 U.S.C. § 1692f(1).................................................................. 26, 27

15 U.S.C. § 1692i(a)(2).................................................................. 11

15 U.S.C. § 1692(e).................................................................6, 17, 21, 28

Minn. Stat. § 334.01 .................................................................. 6, 36

Minn. Stat. § 491A.01 .................................................................. 39

Minn. Stat. § 542.10.................................................................. 11

Minn. Stat. § 548.101 (5). .................................................................9, 12

Minn. Stat. 549.09.................................................................. 6, 37

Minn. Stat. 645.26, subd. 4 .................................................................. 6, 36

Appellate Case: 16-4356    Page: 4    Date Filed: 03/08/2017 Entry ID: 4510143

# ARGUMENT

Most of Appellee's arguments are inconsistent with Congress' explicitly stated purpose of §1692 of the FDCPA to "eliminate abusive debt collection practices by debt collectors." *See* 15 U.S.C. § 1692(e).

Appellee brazenly ignores much of Appellant's opening brief:

- Appellee does not dispute that the standard for the unsophisticated consumer must be "objective" and not "subjective."

- Appellee does not dispute that the district court failed to consider Appellant's claim for Appellee's lack of standing or that lack of standing forms a valid FDCPA claim.

- Appellee does not dispute that the language of the FDCPA does not include any reference to "materiality" or that the Supreme Court precedent requires a statutory basis for imposition of a materiality requirement.

- Appellee does not dispute that Minn. Stat. 645.26, subd. 4 requires the subsequently enacted statute to control or that Minn. Stat. 549.09 was subsequently enacted to Minn. Stat. 334.01.

- Finally, Appellee does not dispute that the single citation for the district court's "backstop" argument has been reversed and the "backstop" argument rejected by several Circuit Courts.

Appellate Case: 16-4356    Page: 5    Date Filed: 03/08/2017 Entry ID: 4510143

# I. THE DISTRICT COURT ERRED BY DISMISSING HILL'S CLAIM THAT ARS DID NOT HAVE STANDING TO SUE.

Appellee lacked standing to commence its state court collection lawsuit. That is a violation of the FDCPA. ARS sued without having documentation to establish its ownership of the debt, and without being capable of acquiring such documentation. Doc. #13 at ¶¶ 16 - 28.

Appellee incorrectly alleges that "Hill did not plead that ARS 'lacked standing' in his Amended Complaint, nor did he raise the argument to the district court." Brief at 16. ***Appellee is wrong.***

Appellant's Amended Complaint (paragraphs 16 – 23) alleged that:

16. ARS did not have any documentation at the Conciliation Court hearing from Allina showing the transfer of Mr. Hill's account to ARS.

17. ARS is not capable of acquiring documentation to establish its debt collection claims, including the alleged the transfer of Mr. Hill's account to ARS.

18. Nevertheless, ARS argued at the hearing that Mr. Hill's account had been assigned by Allina Health to ARS.

19. Before and at the hearing, ARS presented to Mr. Hill and to the Court a bill of sale, which ARS represented to be the document establishing the transfer of Mr. Hill's account from Allina to ARS.

20. The Bill of Sale ARS presented to Mr. Hill and to the Court was not an authentic bill of sale effecting a transfer of Mr. Hill's account.

21. Indeed, the undated "Bill of Sale" ARS presented to Mr.

Appellate Case: 16-4356   Page: 6   Date Filed: 03/08/2017 Entry ID: 4510143

> Hill and to the Court purported to "hereby" transfer the account from Allina Health Services to ARS certain "Assets" identified in an attached Exhibit 1A.
>
> 22.  But the purported Exhibit 1A to the "Bill of Sale" presented by ARS was was (sic) printed on August 24, 2015, from ARS's own computer system, by ARS's non-attorney conciliation court representative, Jennifer Nagel.
>
> 23.  Thus, either the Exhibit 1A either was not part of the "Bill of Sale" when it was signed or, alternatively, the alleged account was transferred, if at all, before the execution of the "Bill of Sale" purporting to "hereby" transfer the account.

Doc. #13 at 3 - 5.  Thus, Appellant provided detailed allegations that ARS lacked standing.

Similarly, Hill's opposition to Appellee's motion for judgment on the pleadings devoted a substantial amount of argument to the "fake bill of sale." Doc. #27 at 1, 5-6, 15 – 17, 20.  As explained in Hill's brief, the "fake bill of sale" is significant because a valid bill of sale is necessary under Minn. Stat. § 548.101(5) to establish standing:

> § 548.101 provides a list of things that must be presented to the Court as part of a motion for default judgment in Conciliation Court or District Court for an assigned consumer debt, including: "(5) ***admissible evidence establishing a valid and complete chain of assignment*** of the debt from the original creditor to the party requesting judgment, ***including*** documentation or ***a bill of sale*** evidencing the assignment with evidence that the particular debt at issue was included in the assignment referenced in the documentation or bill of sale." Id. (emphasis added).

Doc. #27 at 17.  As clarified by Hill to the district court, Hill's claim is not

7

based upon Appellee's failure to comply with Minn. Stat. § 548.101, but rather the "fake bill of sale" establishes a lack of standing. Doc. #27 at 20.

Appellee then boldly asserts that a consumer cannot assert an FDCPA violation based upon lack of standing because Hill "has no standing to question the validity of an assignment." Brief at 18. There are two fatal flaws with Appellee's argument.

First, any limitation in Minnesota state law, would not trump the ability of a consumer to bring an FDCPA violation under Federal law for lack of standing. *Suesz v. Med-1 Solutions*, LLC, 757 F. 3d 636, 648 (7th Cir. 2014) ("The Fair Debt Collection Practices Act does not tell states how to organize or operate their court systems. Nor does it directly control court procedures such as venue rules. A debt collector for consumer debts may comply with state law, obtain a perfectly valid state court judgment, and simultaneously violate the FDCPA by suing in the wrong venue.").

The venue provisions of the FDCPA provide an excellent example of this principle of FDCPA law. It is a violation of the FDCPA to file a collection action in any judicial district other than the one where the consumer lives or signed a contract. *See* 15 U.S.C. § 1692i(a)(2). Under Minnesota law, however, a failure to object to venue within 20 days waives the objection and the consumer can no longer challenge the venue. *See*

8

Minn. Stat. § 542.10.  Such conduct by the debt collector nonetheless remains an FDCPA violation. *Suesz*, 757 F. 3d at 648.

ARS' argument is also incorrect under Minnesota law. In *General Underwriters v. Kline*, 233 Minn. 345, 46 N.W.2d 794 (1951), the Minnesota Supreme Court **did not** hold that a debtor cannot challenge an assignment.  In fact, *General Underwriters* held the exact opposite:

> Plaintiff relies on the rule that a debtor has no standing to question the validity of an assignment which is accepted as valid between the creditor and his assignee.  On at least one previous occasion this court has found it necessary to carve an exception from this rule and we believe that the case at bar presents another such occasion.  For the reasons set forth hereinafter, **we hold that the defendants, under the circumstances presented by this case, can question the title of their creditor's assignee.**

*Id.* at 350 – 351. (emphasis added).  The *General Underwriters* Court explained that the basis for the general rule is that "a debtor's only legitimate concern is that he be able to pay with liberating effect." *Id.* at 351. This, of course, is not the concern in this case or under the FDCPA.[1] Moreover, the Minnesota Supreme Court warned that "the rule should be extended no further than this rationale will support it." *Id.*

---

[1] Long after *General Underwriters* was decided, the Minnesota legislature passed a law placing strict requirements on debt collectors to come forward with admissible evidence establishing standing to sue on the debt. Minn. Stat. § 548.101 (5). Thus, it is not only permissible, but ***required*** for Minnesota courts to critically examine evidence of standing.

9

ARS also relies upon the unreported Minnesota Court of Appeals decision in *TEM Capital, LLC v. Leonard*, 2013 Minn. App. Unpub. LEXIS 1049 (Minn. Ct. App. 2013). Like *General Underwriters*, the facts in *TEM Capital **do not*** support ARS' argument. In *TEM Capital*, the consumer contended that its contract with Chase Bank was "an unconscionable contract of adhesion, making the assignment clause invalid." *Id.* at *7.

If Appellee's interpretation of this case is correct, the *TEM Capital* Court would not have looked at the actual proof of assignment. *TEM Capital*, however, ***did analyze*** the evidence of assignment, in Section III of the opinion entitled "Evidence of the assignments was sufficient." *Id.* at *12.

Examination of the proof of assignment is also consistent with the Minnesota district court's decision in *Munoz v. Pipestone Fin., LLC*, 397 F. Supp. 2d 1129 (D. Minn. 2005) in which the Court denied defendant's summary judgment in an FDCPA case where "Defendants have failed to demonstrate that, as a matter of law, Pipestone was assigned the rights to collect interest and attorney fees." *Id.* at 1132.

Appellee's attack on *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) is misplaced. *See* Brief at 20, fn 5. The Seventh Circuit in *Gearing* recognized that it was an FDCPA violation to attempt to collect a

Appellate Case: 16-4356    Page: 10    Date Filed: 03/08/2017 Entry ID: 4510143

debt where the plaintiff did not have the necessary standing. In *Gearing*, the FDCPA defendant failed to establish the necessary subrogee status. In this case, Appellee does not have evidence of ownership or standing and, as alleged in the complaint, "[Appellee] is not capable of acquiring documentation to establish its debt collection claims, including the alleged the transfer of Mr. Hill's account to [Appellee]." Doc #13, ¶17.

## II.   THE DISTRICT COURT ERRED IN REQUIRING HILL TO PLEAD *SUBJECTIVE* CONFUSION.

The Amended Complaint alleges that ARS made false representations in connection with its effort to collect a debt from Hill, including the submission of a false "Bill of Sale," and in making a demonstrably false representation about Hill's account stated liability.

The District Court did not reach any conclusion as to whether Appellee's representations were false. Rather, the District Court dismissed these claims because Hill did not plead *subjective* confusion. Specifically, the Court held that Hill had not stated a viable FDCPA claim because "Hill does not claim that ARS's allegedly misleading conduct actually deceived him or the conciliation court." (App., p. 43.) The Court concluded, "[i]n these circumstances – where neither Hill nor the conciliation court was misled, and Hill won the underlying state court suit – Hill fails to plausibly allege a claim under §§ 1692e, 1692f, and their subsections." (App., p. 44.)

11

Appellee does not understand the difference between objective and subjective confusion. A "subjective" standard requires the actual plaintiff to be misled or confused. An "objective" standard requires that a hypothetical "unsophisticated consumer" be misled or confused.

Appellee appears to concede that the district court was incorrect in its application of a "subjective" standard. *See* Brief at 10-11, fn. 2. ("Both *Janson* and *Hemmingsen* applied an ***objective*** standard when dismissing the plaintiff's claims.") (emphasis added).

On the very next page, however, Appellee argues that "a plaintiff must allege that a defendant's allegedly misleading conduct *actually misled* the plaintiff or another person or entity." Brief at 12 (emphasis in original). This, of course, is a ***subjective*** standard.

This distinction is explained by the Third Circuit in *Jensen v. Pressler & Pressler*, 791 F.3d 413 (3d Cir. 2015), a case relied upon by Appellee. *See* Brief at 22.

> The standard is an objective one, meaning that ***the specific plaintiff need not prove that she was actually confused or misled***, only that the objective least sophisticated debtor would be. *See Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) (***"[T]he FDCPA does not require that a plaintiff actually be confused."***) . . .

791 F.3d at 419 (emphasis added); *See also Woerthwein v. Midland Credit*

12

*Mgmt.*, 2016 U.S. Dist. LEXIS 146624, *7 (N.D. Ill. 2016) ("It is ***irrelevant*** under the objective unsophisticated consumer standard whether the Plaintiff, who actually received a dunning letter, was truly misled or deceived. ***It makes no difference whether or not the actual FDCPA Plaintiff was actually misled***, only if the unsophisticated consumer would be misled.") (emphasis added). As Appellee admits, "[b]oth *Janson* and *Hemmingsen* applied an ***objective*** standard when dismissing the plaintiff's claims." *See* Brief at 10-11, fn. 2. (emphasis added).

The same standard was applied by this Court in *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000) ("[t]his standard protects the uninformed or naïve consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collections letters").

The purpose of §1692 the FDCPA is "to eliminate abusive debt collection practices by debt collectors. . . ." 15 U.S.C. § 1692(e). Because the focus of the FDCPA is on the conduct of the debt collector, an "***objective***" standard is used to evaluate the violation, not a "subjective" standard focusing on the individual consumer.

Finally, the district court's determination that Hill satisfied *Spokeo*

13

standing establishes that Hill **also** would satisfy a "subjective" standard.

The District Court held:

> As alleged, these are real harms and not merely procedural violations....Indeed**, the Court finds that Hill satisfies the concreteness requirement even though he successfully defended ARS's claims in conciliation court**....Here, given the particular circumstances of this case, **the Court finds that ARS's alleged violations of Hill's rights to truthful information and freedom from efforts to collect unauthorized debt constitute an injury in fact.**

(App., pp. 41-42) (emphasis added). Appellee do not appeal from this determination by the district court. Brief at 5, fn. 1. Thus, Hill would satisfy even a "subjective" standard.

## III. THE DISTRICT COURT RULING PROHIBITS CONSUMERS WHO PREVAIL IN STATE COLLECTION CASES FROM BRINGING FDCPA CLAIMS.

According to the district court, the reason Appellee's misrepresentations are not material is that "Hill alleges that he chose to defend the conciliation court suit and succeeded in that defense." (App., p. 45). In other words, where a consumer defends himself against misrepresentations by a debt collector in litigation, and prevails in the state court, the consumer has forfeited his right to bring an FDCPA claim.

The District Court's adoption of this *per se* rule is reversible error for at least two reasons.

14

## A. The FDCPA Does Not Contain A Materiality Requirement.

Appellee does not dispute that in enacting the FDCPA, Congress chose not to impose a materiality requirement. Nor does Appellee dispute that under Supreme Court precedent, ***the statutory text*** is the starting place for "discern[ing] whether [a statute] require[s] a showing of materiality." *See Neder v. United States*, 527 U.S. 1, 20 (1999).

Appellee does not even address the fact that the Supreme Court has never adopted a materiality requirement and ***avoided*** any pronouncement regarding materiality in *Sheriff v. Gillie*, 136 S. Ct. 1594, f.n 6 (2016). If the materiality requirement was as obvious as Appellee suggests, the Supreme Court would have said so in *Sheriff*.

Instead of addressing the actual statutory language or the Supreme Court's directive on addressing the issue, Appellee simply cites to cases that have applied a "materiality" requirement. With the exception of *Jensen*, none of these cases address the argument raised by Appellant in this case.

Moreover, none of the case cited by Appellee contain facts similar to the case at bar. Because they are based on fact specific situations, the cases cited by Appellee are ***inconsistent*** in their application of materiality.

1. *Hahn v. Triumph P'ships LLC,* 557 F.3d 755 (7th Cir. 2009).

In *Hahn*, the alleged FDCPA violation was interest added in another

15

line. *Id.* at 756. The Seventh Circuit held the statement in the letter was true. *Id.* at 757. ("Her only argument is that the letter is false--and, as we have concluded that the statement is true, the case is over.")

Thus, the issue of "materiality" was *dicta*. *Id*. Moreover, the *Hahn* Court expressly distinguishes its facts from where the debt collector is seeking an incorrect amount. *Id.* at 757. ("Applying an incorrect *rate* of interest would lead to a real injury. . . .") (emphasis in original). Therefore, under *Hahn*, the violation of the FDCPA ***in this case*** would be material.

Because *Hahn* relies upon the ***wrong*** purpose for the FDCPA, its creation of a materiality standard is based upon the ***wrong*** foundation. *Id.* at 757-758. ("The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).") The *Hahn* Court relied upon a conclusory statement in *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, (7th Cir. 2009).

Congress' express purpose of the FDCPA is spelled out explicitly in the statute:

> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote

16

consistent State action to protect consumers against debt
collection abuses.

*See §*1692(e).  Thus, the actual purpose of § 1692 is directed at the **conduct**

of debt collectors **not** providing information to consumers. Therefore, the

materiality requirement adopted in *Hahn* was based upon a faulty premise.

    *Hahn* never addressed the fact that materiality is not found in the

language of the FDCPA statute or the fact that the Supreme Court requires

that the statute be the starting point for any materiality requirement. *See*

*Neder*, 527 U.S. at 20.

        2. *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir.
           2009)

    The alleged violation in *Miller* was that the state-court complaint

alleged that credit card debt was for "money loaned." *Id.* at 592.

    The Sixth Circuit in *Miller* rejected the FDCPA claim based upon the

conclusion that the unsophisticated consumer would not be confused. *Id.* at

597 ("Appraising the complaint in a common sense way convinces us that,

just as Miller 'pretty much' understood JBR's language, so too would the

least-sophisticated consumer.").

    The dissent in *Miller* provides a more in-depth analysis.  The dissent

emphasizes that the least sophisticated consumer intended to be a sword,

not shield. *Id.* at 599. ("***It is not clear to me that this is an***

17

**appropriate use of the least-sophisticated-consumer test, which was primarily intended as a sword for consumers, not a shield for debt-collectors making false statements**.") (emphasis added).

The dissent in *Miller* emphasized that even if a materiality test is applied, the question is one of fact for the jury. *Id. at 599*. The ruling granting judgment on the pleadings in this matter is therefore inappropriate for Appellee's literally false statements.

The majority in *Miller* does not provide any analysis or basis for a materiality requirement under the FDCPA. *Miller* simply cites to and quotes *Wahl. Miller* never addressed the fact that materiality is not found in the language of the FDCPA statute or the fact that the Supreme Court requires that the statute be the starting point for any materiality requirement. *See Neder*, 527 U.S. at 20.

      3. *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027 (9th Cir. 2009)

In *Donohue*, the FDCPA complaint was based upon a letter that mislabeled the amount due. *Id.* at 1034.

The *Donohue* Court does not provide any analysis of the materiality requirement other than to cite to *Hahn* and *Miller* and conclude that the test is not inconsistent with its (incorrect) view of the purpose of FDCPA. *Id.* at 1034 ("But immaterial statements, by definition, do not affect a consumer's ability to make intelligent decisions."). **This, of course, is**

18

**not Congress' actual stated purpose for the FDCPA.** *See §* 1692(e).

According to *Donohue*, materiality is simply a corollary to unsophisticated consumer test. 592 F.3d at 1034 ("We recognize, as the Seventh Circuit already has, that the materiality requirement functions as a corollary inquiry into whether a statement is likely to mislead an unsophisticated consumer."). **This, of course, means that the materiality requirement has no application to a claim under § 1692f(1).**

*Donohue* never addressed the fact that materiality is not found in the language of the FDCPA statute or the fact that the Supreme Court requires that the statute be the starting point for any materiality requirement. *See Neder*, 527 U.S. at 20.

       4. *Gabriele v. Am. Home Mortg. Servicing*, 503 Fed. Appx. 89 (2ᵈ Cir. 2012)

In *Gabriele*, the FDCPA claim was based upon state court procedural requirements and a false affidavit. The Second Circuit applied a materiality test relying on *Hahn*, *Miller*, *Donohue* and *Warren v. Sessoms & Rogers*, P.A., 676 F.3d 365, 374 (4th Cir. 2012).

The Second Circuit in *Gabriele* adopted a broader view of what constitutes materiality. 503 Fed. Appx. at 94 ("Our case law demonstrates that communications and practices that could mislead a putative-debtor *as*

19

***to the nature and legal status of the underlying debt***, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA.") (emphasis added).

Thus, under the materiality test applied in *Gabriele*, Appellee's violations of the FDCPA are material because they could mislead a consumer "as to the nature and legal status of the underlying debt." For example, filing a state court complaint without standing is unquestionably misleading a consumer as to the nature and legal status of the debt.

Nonetheless, *Gabriele* never addressed the fact that materiality is not found in the language of the FDCPA statute or the fact that the Supreme Court requires that the statute be the starting point for any materiality requirement. *See Neder*, 527 U.S. at 20.

### 5. *Elyazidi v. SunTrust Bank*, 780 F.3d 227 (4th Cir. 2015)

In *Elyazidi*, the FDCPA claim was based upon a state court attorney affidavit seeking 25% of the debt as future attorneys' fees. Contrary to *Gabriele*, the *Elyazidi* Court adopted a very narrow test for materiality. *Id.* at 234.

It is worth noting that although the *Elyazidi* Court applied materiality to the section of the opinion addressing Count III (a claim under § 1692e), it did not address materiality in the separate section dealing with Count IV - the claim under § 1692f(1). *See id.* at 235.

20

*Elyazidi* never addressed the fact that materiality is not found in the language of the FDCPA statute or the fact that the Supreme Court requires the statute be the starting point for any materiality requirement. *See Neder*, 527 U.S. at 20.

6.  *Jensen v. Pressler & Pressler*, 791 F.3d 413 (3rd Cir. 2015).

*Jensen* is the most recent of the Circuit Court decisions cited by Appellee and the only one to address the fact that materiality does not appear in the language of the FDCPA statute.

The FDCPA claim in *Jensen* was based upon a false representation of the name of the Superior Court clerk on a form subpoena. *Id.* at 416.

The *Jensen* Court emphasized that the only FDCPA claim was based upon § 1692e. *Id.* at 415. Thus, *Jensen* does not address the applicability of a materiality statute to § 1692f(1).

The *Jensen* Court admits that the materiality test does not come from the language of the statute itself, but makes it a corollary to the "least sophisticated (or unsophisticated) consumer test."

> Jensen correctly argues that the word "material" does not appear in the statute. However, that is not necessarily outcome determinative. Congress's intent guides our interpretation of statutes. ***Our interpretive task begins and ends with the text of the statute unless the text is ambiguous or does not reveal congressional intent "with sufficient precision" to resolve our inquiry.***

\* \* \*

21

Jensen's reliance on the precise wording of the statute here ignores the fact that materiality requirement is simply a corollary of the well-established "least sophisticated debtor" standard, which courts have routinely applied to alleged violations of § 1692e in order to advance the congressional intent of the FDCPA.

*Id.* at 418. (emphasis added) (citations omitted).

**The text of the FDCPA is not ambiguous and it unequivocally contains Congress' intent.** *See* §1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors. . . ."). As the *Jensen* Court recognized, that should have been where the Court's interpretive task "begins and ends." *Id.* at 418.

Instead, the *Jensen* Court relied upon the answer to the question "TO WHOM" the FDCPA is directed to adopt a "HOW" requirement. This interpretation by the Court is unwarranted and contrary to Congress' stated purpose of the FDCPA.

*Jensen* correctly notes that the "least sophisticated consumer test" is also not explicit in the FDCPA. Relying upon the Eleventh Circuit's analysis in *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985), the *Jensen* Court explains why this "TO WHOM" answer is consistent with Congressional intent.*Id.* at 419-420.

In fact, the *Jensen* Court explains that the FDCPA encourages suits filed by the ***sophisticated*** consumers to effectuate the purpose of the

22

FDCPA. ("Thus, the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.") (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

The *Jensen* Court relies upon the answer to the question "TO WHOM" the statute is analyzed to improperly import a materiality requirement of a "HOW" requirement into the language of the statute. *Id.* at 421.

This argument completely misses the point. There is no requirement to apply the same analysis to false statements as to misleading or deceptive statements. *See Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) ("The use of '*or*' in §1692e means that, to violate the FDCPA, a representation by a 'debt collector' must merely be false, *or* deceptive, *or* misleading.") (emphasis added).

The blame for this confusion rests on the language of the Seventh Circuits decision in *Wahl*. *Jensen*, 791 F.3d at 420. ("The *Wahl* court stressed that the state of mind of the debtor is *always* relevant, and that debt collection communications must be assessed from the perspective of

23

the least sophisticated debtor regardless of whether a communication is alleged to be false, misleading, or deceptive.") (emphasis in original).

Thus, the unnecessary importation of a "HOW" requirement into the unambiguous language of the FDCPA statute is ultimately based upon the *Wahl* Court's incorrect statement of the ***purpose*** of the FDCPA. When the correct purpose (as explicitly stated by Congress) of "eliminat[ing] abusive debt collection practices by debt collectors" is considered, the materiality requirement, as well as the "state of mind of the debtor" are no longer relevant or applicable.

Finally, Appellee cites *Jensen* for the proposition that "[n]o Circuit Court that has addressed this issue has disagreed with *Hahn* and held that an immaterial false statement made during the collection of a consumer debt is actionable under the FDCPA." Brief at 22, fn. 6. As raised in Appellant's principle brief (and completely ignored by Appellee), *Jensen* is incorrect. See *Bourff*, 674 F.3d at 1241 ("A false representation in connection with the collection of a debt is sufficient to violate the FDCPA facially, even where no misleading or deception is claimed."). This argument also ignores the fact that the Supreme Court has never adopted a materiality requirement and recently avoided any pronouncement regarding materiality in *Sheriff*, 136 S. Ct. at f.n 6.

With the exception of *Jensen*, none of the cases cited by Appellee address a statutory basis for a "materiality" requirement. Instead, the requirement was created by the Seventh Circuit in *Wahl* and *Hahn* based upon an incorrect statement of the purpose of the FDCPA. The rest of the cases simply cite to and rely upon this false foundation until an entire house of cards has been built.

Following the precedent of the Supreme Court in *Neder* and starting with the statute itself leads to a different result. There is simply no materiality requirement in the statute. Congress' explicit purpose of the FDCPA ("eliminate[ing] abusive debt collection practices by debt collectors") ***supports*** the conclusion that a "materiality" requirement should not be injected into the statute.

**B. The FDCPA Violations Were Material.**

Even if Congress had imposed a "materiality" requirement into the FDCPA, Hill's pleading would satisfy it. As the *Jensen* Court explained, the bar is ***very low***:

> As our jurisprudence in this area has shown, this is not a particularly high bar.
>
> * * *
>
> Thus, the materiality requirement, correctly applied, effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor.

Appellate Case: 16-4356   Page: 25   Date Filed: 03/08/2017 Entry ID: 4510143

*Id.* at 421-422. Appellee's misstatements in this case are not "hypertechnical."

According to the Amended Complaint, ARS violated Hill's rights under the FDCPA by suing him without having standing, by seeking to collect his money through misrepresentations, and by attempting to collect interest that was not available under Minnesota law, forcing him to spend a day defending himself in the conciliation court. (Add., pp. 16-20; ¶¶ 7-8; 13-15; 29-30.)

Absent a lawsuit filed without standing, an unsophisticated consumer would not have been required to spend a day in conciliation court defending himself against Appellee's allegations. Thus, the FDCPA violations were objectively material.

The basis for the District Court's finding that the misrepresentations were not material is the fact that Hill ***prevailed*** in the conciliation court. This ***subjective*** test is contrary to all of the Circuit Court cases cited by Appellee that consistently applied an ***objective*** standard.

Nothing in the language of the FDCPA suggests a Congressional intent to provide an FDCPA exemption for debt collectors who make misrepresentations in state court proceedings. Indeed, such a result directly contradicts the Supreme Court's clear ruling that the FDCPA ***does***

26

indeed protect consumers against misrepresentations by debt collectors (even attorney debt collectors) in state court proceedings. *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

Finally, the District Court's conclusion is wrong in light of *Spokeo* and its own analysis of Hill's standing. According to the District Court's conclusion, which ARS chose not to appeal, ARS caused Hill concrete and particularized harm:

> Hill alleges that ARS violated his right to truthful information by providing him with a fake document and by including a misleading claim in ARS's conciliation court complaint. Further, he alleges that ARS violated his right to be free from collection of unauthorized interest by attempting to collect unlawful interest from Hill in the conciliation court proceeding. As alleged, ***these are real harms and not merely procedural violations***....Indeed***, the Court finds that Hill satisfies the concreteness requirement even though he successfully defended ARS's claims in conciliation court***....Here, given the particular circumstances of this case, the Court finds that ***ARS's alleged violations of Hill's rights to truthful information and freedom from efforts to collect unauthorized debt constitute an injury in fact***.

(App., pp. 41-42) (emphasis added).

It defies all logic and fairness for the District Court first to conclude that the Amended Complaint alleges real, concrete harm and an injury in fact to Hill, based on the violation of rights granted Hill by the United States Congress in the FDCPA, then to reject Hill's FDCPA claims on the

Appellate Case: 16-4356    Page: 27    Date Filed: 03/08/2017 Entry ID: 4510143

basis that the alleged violations were not material.

## IV.  THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S CLAIM BASED ON AN ATTEMPT TO COLLECT UNAUTHORIZED INTEREST.

As alleged in the Amended Complaint, the only applicable interest statute to Appellee's conciliation court claim is Minn. Stat. § 549.09.  That statute, by its express terms, holds that interest is not available for a claim under $4,000 (such as Appellee's claim against Hill).  Appellee attempted to circumvent the statutory prohibition on interest for its claim by relying upon another, older statute – Minn. Stat. § 334.01 – that was superseded by the Minnesota legislature's adoption of § 549.09 in 1984.

Appellee does not dispute that interest is not permitted if Minn. Stat. § 549.09 is the applicable statute. Instead, the sum total of Appellee's argument is that interest could be alleged if *another statute* was applicable.  Thus, the issue on appeal comes down to a single question: *which interest statute applies to Appellee's Conciliation Court complaint?*

Appellee *completely ignores* Minnesota Statute 645.26, subd. 4, which provides that "[w]hen the provisions of two or more laws passed at different sessions of the legislature are irreconcilable, *the law latest in date of final enactment shall prevail*." (emphasis added).

Appellee does not dispute that the two statutes are irreconcilable and

28

Appellee similarly ignores this Court's decision in *Greene v. Dayton*, 806 F.3d 1146 (8th Cir. 2015) applying Minn. Stat. § 645.26, subd. 4 to a similar legal question. *Id.* at 1149 ("The providers' state preemption argument against the SEIU also fails because even if the state laws conflict 'irreconcilabl[y],' the law passed most recently by the legislature controls and thus the Act trumps the older statute's definition of 'employees.' *See* Minn. Stat. § 645.26, subd. 4.");

This leaves only one factual question: ***which statute was adopted most recently***? The undeniable answer to that question, as explained in Appellant's Opening Brief, and ***not disputed*** by Appellee, is Minn. Stat. 549.09.

Appellee ignore the proper statutory construction pursuant to Minnesota statute and argues that "Minnesota courts recognize that a 'creditor is entitled to interest where damages are liquidated. . . ." Brief at 28 (quoting *Egge v. Healthspan Servs. Co.*, 2002 U.S. Dist. LEXIX 23985, at *9 (D. Minn. 2002). *Egge*, however, did not address the conflict between §549.09 and §334.01. Instead, the only issue in *Egge* was whether §334.01 was applicable, when the Court did not consider §549.09.

The other case cited by Appellee is *L.P. Medical Specialists, Ltd. v. St. Louis County*, 379 N.W.2d 104, 110 (Minn. Ct. App. 1985). Brief at 28. The

Appellate Case: 16-4356    Page: 29    Date Filed: 03/08/2017 Entry ID: 4510143

Minnesota State Court of Appeals in *L.P. Medical Specialists* considered the applicability of §334.01 and §549.09 ***to a medical debt.*** The *L.P. Medical Specialists* court held that ***§ 334.01 only applied until §549.09 was adopted in 1984***. Consistent with the statutory analysis under § 645.26, subd. 4, *L.P. Medical Specialists* held §334.01 ***stopped being applicable*** in 1984 when § 549.09 was adopted!!

Appellee relies on the Minnesota Court of Appeals decision in *Hogenson v. Hogenson*, 852 N.W.2d 266 (Minn. Ct. App. 2014) which applied § 334.01 to a conversion claim. Brief at 29-30. As explained in Appellant's opening brief, however, this lone decision does not answer the question presented to this Court. *See Johnson v. Riddle*, 305 F.3d 1107, 1119 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.").

In performing that analysis, "lower state court decisions may be helpful, but they are not dispositive of a prediction of how the highest court in the state might rule on the issue." *Id.*; *see also Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 876 (8th Cir. 2000) (in determining state law, federal court must predict how the State Supreme Court would

30

resolve the issue).

However, the required analysis was performed by the Minnesota District Court in *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.,* 715 F. Supp. 2d 871 (D. Minn. 2010), which properly recognized that "[b]ecause the Supreme Court has not decided whether §334.01 or §549.09 applies in a breach of contract action, the court must predict how it would resolve this issue." *Id.* After performing its analysis, the *Best Buy* Court held that "the court predicts that the Minnesota Supreme Court would apply § 549.09." *Id.* at 878.

Given that Minn. Stat. § 549.09 is the applicable statute, ARS's attempt to collect interest in Conciliation Court represents an attempt to collect an amount that it was not entitled to. *See* Minn. Stat § 549.09 ("Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest shall not be awarded on the following ... (4) judgments or awards not in excess of the amount specified in section 491A.01"). Minn. Stat. § 491A.01 is the jurisdictional statute for the conciliation court, which limits the Court to considering cases with claims of less than $15,000 (or $4,000 for consumer debt cases).

31

Thus, Minnesota law specifically prohibited ARS from seeking interest from Hill in conciliation court. Reversal and remand is therefore required.

## V. THE DISTRICT COURT ERRED IN HOLDING THAT CONDUCT VIOLATING 15 U.S.C. § 1692e CANNOT VIOLATE 15 U.S.C. § 1692f.

As an "alternative basis for dismissal" of Hill's claims, the District Court determined that "to the extent Hill's claims under § 1692f are premised on the same conduct that Hill alleges violates § 1692e and its subsections, such claims must fail." (App., pp. 45-46.) The District Court refers to this as 15 U.S.C. § 1692f's "backstop" function.

The District Court's § 1692f "backstop" argument is based on *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp.2d 945 (D. Minn. 2008), which adopted the notion from *Edwards v. McCormick*, 126 F. Supp.2d 795 (S.D. Ohio 2001). Appellee does not provide any other legal basis for this argument on appeal. *See* Brief at 31-32.

However, as explained in Appellant's opening brief, the Sixth Circuit in *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529 (6th Cir. 2014) subsequently reviewed, then rejected, this legal argument from *Edwards*:

> While "misleading" practices under §1692e and "unfair" practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and

Appellate Case: 16-4356    Page: 32    Date Filed: 03/08/2017 Entry ID: 4510143

are not mutually exclusive. **A debt collector's action could be "misleading" under § 1692e, "unfair" under § 1692f, or, as alleged here, both.**

*Id.* at 536(emphasis added); *see also Holt v. LVNV Funding, LLC*, 147 F. Supp.3d. 756, n.2 (S. D. Ind. 2015) ("Yet, the Sixth Circuit's subsequent holding in *Currier* directly contradicts this language in *Edwards*. . . .[I]t would seem that *Currier* overruled *Edwards* in this respect.")

Appellee simply ignores this argument and cites to the district court decision in *Baker.* Brief at 31.

As also explained in Appellant's opening brief, the "backstop" argument has been rejected by other Circuits. *See Clark v. Capital Credit & Collection Servs.,* 460 F.3d 1162, 1177 (9th Cir. 2006) ("And, it appears that we (as well as other courts) routinely have allowed debtors to pursue causes of actions under multiple sections of the FDCPA, even though each violation was based upon the same circumstances."); *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 n.10 (9th Cir. 1994) ("However, it is not unusual for an action to violate more than one FDCPA provision.").

Appellee simply ignores these decisions. §1692e and §1692f(1) can both "apply to a given factual situation." To rule otherwise would not serve the express stated purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors."

Appellate Case: 16-4356    Page: 33    Date Filed: 03/08/2017 Entry ID: 4510143

## CONCLUSION

The District Court's order dismissing this case should be REVERSED

and REMANDED.

Respectfully Submitted,

/s/*Darren Brayer Schwiebert*
Darren Brayer Schwiebert

*Counsel for Appellant*

March 8, 2017

34

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

Pursuant to Rule 32(a)(7)(c) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing brief (exclusive of the Table of Contents and Authorities, certificates of service and compliance, but including footnotes) contains 6,499 words as determined by the word counting feature of Microsoft Word 2010.

Pursuant to Circuit Rule 28A(h), I also hereby certify that the electronic files of this brief have been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus free.

Respectfully Submitted,

*s/ Darren Brayer Schwiebert*

*Attorney for Appellant*

35

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2017, I electronically filed the foregoing Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully Submitted,

*s/ Darren Brayer Schwiebert*

*Attorney for Appellant*

Appellate Case: 16-4356     Page: 36     Date Filed: 03/08/2017 Entry ID: 4510143